May it please the Court, I'm Richard Walker, appearing before the Court today on behalf of Maricopa County, Arizona's defendant, Helen. With the Court's permission, I'd like to reserve three minutes of my time for rebuttal. This is a case that comes before the Court after my client, Maricopa County, was dismissed out of the case in October of 2009 on a joint motion in which the plaintiffs represented to the Court that my client was not necessary for... We just lost the sound again on counsel. It's starting. I can now. It's going... It's off again. Okay, Judge Berzon, go ahead. It's off again. Well, can you hear Judge Berzon? She's the only one speaking right now. I can't hear her, can't hear counsel, can't hear you. Is that better? Yes. I can hear you loud and clear. Okay. Well, all right. The question is, can you explain to me why this matters in any practical way at all? Yes, I'll try, Your Honor. The issue is whether, by making the county a party again to this litigation after it has been fully... And let me make one amendment to my question. The sheriff is still in the case.  Okay. Let's assume the sheriff's in the case. Does it make any difference? It does, Your Honor, in the sense that if the county is held to be bound by the prior inner judgment and the injunctive orders, it places the county board of supervisors in a position of arguably being responsible for the sheriff's conduct in... Well, it's arguable, and it can be argued at that point that it becomes a problem. And I would suspect that the answer would be that the county is only responsible for what it has the authority to control as a matter of contempt, if that's what you're concerned about. And certainly, if that were... So that's when the issue would come to the fore, and it seems to me it would be resolved as a matter of contempt law, not as a matter of who was formally named in the case. Aside from that, does it make any difference? I think it does, Your Honor, in the sense that there's been no MacMillan analysis done in this case, no record made on which a MacMillan analysis could be made. And in order for the liability to be imputed to the county for the actions of the sheriff, there needs to be a determination, as the Supreme Court prescribed in the MacMillan case, about on whose behalf was the sheriff acting. This Court has already observed twice, I believe, that the sheriff's actions arose in the context of enforcement of state and federal immigration laws. This isn't a damages case. And ordinarily, in damages cases is where that matters, because there's a difference between state and county liability for purposes of 1983 damages. But with regard to an injunctive action, the injunction runs against the sheriff in his official capacity no matter what, and no matter what, the county is going to pay for the cost of that injunction. And I'm having difficulty seeing why the 1983 MacMillan question that you've raised is pertinent either. Well, with all respect, Your Honor, I think we may have a different perspective on the significance of MacMillan. I agree with MacMillan to say that in order for any liability, whether it's based on injunctive relief or for damages, to be imputed to a county government based on the statute, the court must determine whether the sheriff was in fact acting as an agent of the county or on behalf of some other entity, the state, or arguably even the federal government here, given that, as the Court has observed, Sheriff Arpaio was engaged in immigration enforcement of both state and federal law.  What is the statutory authority for you to bring the appeal at the time that you brought it? I think, Your Honor, the authority for bringing the appeal at this time is that as a non-party, the county, and not just as a non-party, but a party that was very purposely dismissed out of the case, the county was not bound by the judgment and the earlier orders. That doesn't answer my question at all. What statute allows an appeal at this time? Ordinarily, the appeal must be taken within 30 days after the entry of judgment, and there are other methods by which the substitution of the county as a party can be challenged, for example, by intervening or by bringing a mandamus action to require you to be non-joined. But I don't see any statute that allows you to appeal now, and isn't that jurisdictional? Well, Your Honor, I think the fundamental point is I'm not aware of anything in the law, either under the federal rules of appellate procedure or any other provision of law, that says the time for acting can commence with respect to somebody who's not a party to an action. And Rule 3 makes it clear that the federal rules of appellate procedure are applicable to parties. Well, the substitution of the county as a party in place of whoever was previously the defendant is now law of the case, correct? The Supreme Court denied cert on your petition, right? That's correct. So whether we're right or wrong, that is the law of the case, that there's been a substitution, not a new party. So where does that leave you? Well, while I think it is the law of the case, Your Honor, this Court and the Supreme Court have both noted that law of the case is a discretionary doctrine, and particularly in cases where the issue arises out of a decision in which the court has not fully articulated its rationale, the prior decision is worthy of fairly careful scrutiny. But isn't the law clear that when there's a mere substitution as distinct from adding a new party, the time for appeal does not start running again? I'm not aware of authority to that effect, Your Honor. Are you aware of any authority to the contrary? No, Your Honor, and I think this is a very unusual fact. If the case and the executor is substituted, that doesn't start the clock again for entry of judgment, does it? I suppose not, if properly substituted. Well, that's the question. That's why I'm circling back to saying at this point, it seems to me that you're foreclosed from arguing that you were improperly substituted. Well, Your Honor, I think that when the court issues a decision that has the effect of suggesting that a non-party has suddenly, after judgment, become subject to that judgment, the only meaningful opportunity for appealing the issues in that judgment that affect the formerly non-party would be an appeal with the appeal rights starting to run on the date that the non-party is brought into the case. But, in fact, you did file a petition. Can you hear Judge Wallace now? Yes. Good. Yes, I can. Thank you. Okay. In fact, you did file a petition for a hearing, and it was denied, and you filed a petition for a certiorari, and it was denied. So you did have an opportunity to have us and the Supreme Court hear your objection to the substitution. That is true, but both the original decision, substituting my client in, and the ruling on the petition for rehearing were without fully articulated rationale. And under the Hauser decision of this Court ---- Well, I was not aware that the quality of our ---- we had a rationale, and we probably still do. But in general, the law of the case rationale or theory doesn't depend on how extensive or how long the discussion is and the opinion is, does it? Well, the Hauser decision, which I think I have a copy of here. Yes. U.S. v. Hauser, Ninth Circuit, 1986, specifically states that where the earlier decision is a summary decision, and I'm quoting, a summary disposition without a reasoned analysis ---- But this wasn't a summary disposition without a reasoned analysis. There is no articulation either in this Court's decision in last April or on the ruling on the petition for rehearing of the reason why the Court found it necessary for the county to be added to the case. Well, it seems to me that it's not as complicated as that, because the case against the sheriff in his official capacity is a case against the entity for whom he works, that he is responsible for. And Arizona law became clear that that is your client. And your client had originally been joined, and under the ---- that everybody shared a misimpression that it was a different entity, the sheriff's office. I guess I just don't see any prejudice, which is circling back to Judge Berzon's original question. Well, with respect, Your Honor, I think this takes us back to McMillan and the fact that that analysis has not been performed in this case. Could I intercede for just a second? Earlier on when the substitution was made, the county was represented by a different counsel, correct? Not at the time the substitution was made, Your Honor. Who was the firm of Steptoe, who were they representing? They are former counsel to the county at the time the case was, before the county was dismissed out of the case at the trial court level. Okay, so they were representing, Steptoe was representing your client at that time and acting as your client's attorney, correct? That's correct, Your Honor. Okay, in looking at the petition to make the change that was presented to the court, on page three of that, which is excerpt of record 586, it says, whereas in the interest of judicial economy and efficiency, plaintiffs have proposed the dismissal of defendant Maricopa County, and these words I call to your attention, without prejudice to rejoining defendant Maricopa County as a defendant in this lawsuit at a later time, if doing so becomes necessary to obtain complete relief. And it was pursuant to that stipulation of the parties that Judge Snow let your client out. Now, it seems to me that your client has a very tough time now, when its attorney has stipulated that it's without prejudice at a later time, if it becomes necessary to obtain complete relief, that we can put the client back in. Even aside from FRAP 21, which allows us to do it, it seems your client has stipulated that the court can do it. How do we handle that? Well, Your Honor, two comments in response to your question. The first is, up until this court's decision last April, no party had contended or even suggested that it thought Maricopa County needed to be rejoined in the case. That's true. Everybody believed that. But this stipulation says if we're wrong and it's necessary to join the county to get complete relief, we're stipulating that it can happen. That's your client's stipulation. I'm not blaming you. You weren't the lawyer. But that stipulation is in the record. That's correct, Your Honor. But I think the stipulation to a dismissal without prejudice does not amount to a waiver of defenses against rejoinder, if any exist, if the question ever arises. Without prejudice to rejoining defendant. That's what your client stipulated to. I agree. But I don't think that stipulation amounts to a waiver of objections based on anything other than the fact that there was this dismissal. In other words, I think that stipulation... No, that's not true. The stipulation says if it becomes necessary to obtain complete relief. And that's what you're talking about. The complete relief is what you're arguing about. But your client has stipulated a way, if it's necessary to rejoin your client to get complete relief. I'm not blaming you. I just don't know how to handle that stipulation in line with your argument. I appreciate you not blaming me, Your Honor. But my point would be I think the stipulation would, under certain circumstances, amount to a waiver of objection based on the earlier dismissal to rejoinder. But there's been no showing and, indeed, this Court has not articulated any reason why the rejoinder of the county is necessary in order for plaintiffs to obtain full relief. Can I ask one last question? You, McMillan, and just even taking the merits of it all, which, as indicated, were somewhat skeptical about given the earlier opinion, you didn't raise McMillan, for example, in your PFR, as I recall. And the basis for the earlier decision was some extremely strong and specific state law cases that say that, as we read them and read them, and I read them now, that the NCSO is essentially a subdivision of the county, and that if, whether named or not, the county is responsible for the sheriff in his official capacity. Are those just irrelevant? I know your current briefs just ignore them. Well, no, I don't think they're irrelevant. In fact, I think there's a long line of them. So isn't that exactly contrary to McMillan, where the State case law was that the sheriff was a representative of the State, and here we seem to have exactly the opposite situation? Well, I respectfully disagree that we have exactly the opposite situation. On the contrary, I think there's strong parallels. As a matter of the State case law? As a matter of State case law, I think you have very strong parallels to the facts that led to the Court's conclusion in McMillan that the sheriff was not acting on behalf of the county. For example, we have a long line of cases, against which only two that I know of run to the contrary, two district court cases holding that the county has no effective control over the sheriff in his exercise of law enforcement duties and therefore cannot be held liable under the doctrine of respondeat superior. Now, we're not talking about respondeat superior liability here, but lack of control for respondeat superior purposes is, I submit, the same issue as the lack of control that the Supreme Court in McMillan held was a very important factor in determining whether the sheriff of Monroe County was acting on the county's behalf in that case. Counsel, thank you. You've exceeded your time, but Judge Wallace has some more questions, I think. Just one question. I'm circling back to Judge Berzon's initial question to you. That's what this has to do with. And I won't try to summarize your response to her question, but the response itself seemed to me to be inconsistent with footnote four on page 18 of your opening brief. It is important to note the county does not take the position that dismissal of claims against it would absolve it of any obligations to provide funding for the extensive reforms of MCSO embodied in the district court's injunction. Isn't that just opposite to what you argued in response to Judge Berzon's question? No, Your Honor, I don't think so. The point we're making in the footnote is this is not about whether the county will or will not fund the costs associated with compliance with Judge Snow's injunctions. We read ARS 11-444 as requiring that as a matter of statute. But what we are primarily concerned with here is placing the county, if it is found to be subject to the judgment and injunctive orders in this case, in the position of exercising oversight over the sheriff that under Arizona law it does not have the lawful authority to do. It seems to me your footnote points out there's no prejudice. That's the problem I have. It seems to me that is difficult to square with your earlier answer to Judge Berzon, but I have your answer. Thank you. Thank you. We used a lot of your time as IT folks, so we'll give you some rebuttal time when the time comes. Thank you. Good morning, Your Honors. Stanley Young for Covington & Burling for the Plaintiff's Appellees. With me is Jorge Castillo of MALDEF. I have a number of points. The first two are jurisdictional, the 30-day period. There's the rightness issue, which I think Judge Berzon has already asked about. And then there are the issues with respect to whether the earlier decision of the court under McMillan and other applicable case law to substitute the county for the MCSO was the correct one. As to the issue of jurisdiction under FRAP 4A and 28 U.S.C. 2107, there is no authority to support the accrual theory that the county is arguing for now. Doesn't that collapse into the question of whether they are properly in the case? If, in fact, we were to have decided that a party that was completely disparate should now go into the case and was never there before, I presume that there would have to be a judgment entered against that party and that that would be appealable. Now, there wasn't a judgment entered as such. So maybe there was no trigger. But it does appear to me that they would be entitled to go back and essentially relitigate the case. And if that were not allowed, I would think they might have an appeal from what was in essence a judgment against them. So in order to decide the appeal question, don't we have to either say we've already decided that they're properly in the case and not as a new party, but simply as a nomenclature problem, or not? I don't see how we can decide that. There would appear to be major due process as well as statutory issues if they really were an entirely new party. If they were a new party. Well, first of all, the statute and the rule talk about the time of the judgment or decision being appealed from as being the triggers for the periods starting to run. If there were later judgments against this absolutely new party, for example, the contempt scenario that you raised earlier, there would be a time for appeal at that time. And I suppose, as Judge Graber suggested, if they asked to relitigate and there were separate parties and weren't allowed to, there wouldn't be a judgment, but they might be able to file a mandamus petition. They could do that. And there would be a judgment as to the contempt or whatever later decision there was, applying what that party would contend to be the improper effect of the earlier judgments, which did not have the chance to appeal because it was not in the case at that time. But the accrual issue, this issue of the due process allowing the new party to appeal the earlier judgments, actually would be contrary to what the Supreme Court says in Bowles v. Russell, where it says that it has no ability to create an equitable exception to the jurisdictional bar of the statute. And that was a case where a district court judge gave the wrong information to the party about when the appeal deadline was. In this case, a court would have to create an exception to the 30-day period with the exceptions that are in the rules, and that is not allowed. In addition, creating such an exception would lead to chaos. The county here argues that it's a new party, which we believe for the reasons we've stated is incorrect. Any party who was later added, any party who substituted, which is what happened in this case later on, there's a new holder of the office, a new person comes in, under the county's rationale would be able to say, well, that judgment two years ago when I personally was not the secretary of the department that's been sued, I get to appeal that now. Because that would be chaos. But that depends on the fact that he's a nominal party. And this one may – and Judge Snow said, as I understand it, that that was his understanding of our ruling. Is that your understanding of our ruling? Yes. It is simply a substitution, a nominal substitution. That's why the stipulation was worded the way it was, because it was not a substantive change in the parties. All of the case law says that the sheriff sued in his official capacity is, in effect, the county. And he is the county with respect to the law enforcement functions at issue here. So is it your understanding, for example, that if – I know there are contempt proceedings. I don't know the state of them with regard to Sheriff Arpaio. Could you bring a contempt proceeding against the county supervisors? If – as long as they pay whatever they're supposed to pay, if Sheriff Arpaio continues to, in your opinion, defy the injunction? I'm sorry. I'm trying to understand what you think the reach of the ruling is. I gather the fear is that the county could somehow become liable for contempt. Is that your – assuming they pay up whatever they're supposed to pay up, is that your understanding? I'm not aware at this point of any contempt potential as to the county. The county does seem to be paying. I do think that if there were a contempt judgment against the county at some subsequent point, that could be the subject of an appeal. Including the fact that they can't control, in their opinion, Sheriff Arpaio? That could be a claim that they would make. And that's why the contentions that the county is making now, that the district court feels it's – that the county is bound by the earlier judgments, does not create a ripe dispute. And that seems to be what they're claiming in footnote 5 on page 18 of the reply brief, that the district court believes that the county is bound by the earlier judgments. Let me ask you – But there can't be an appeal as to beliefs or – I want to ask you the same question I asked your opponent, though. Why does any of this matter? Why did it matter that you had MCSO there to begin with? And why does it matter that you have the county now, given the fact that the sheriff is in the case in his official capacity? Now, I understand that our opinion said maybe there should be consideration given to dismissing the sheriff. But I gather that hasn't been raised in light of all this, won't be, I hope. It won't be. And really, that's a question for the county. I am at a loss to know why this makes a practical difference at all, assuming the county continues to pay. I think the issue is not ripe, and that's part of the problem with this situation, where an appeal is being taken as to an abstract idea. Counsel, does the injunction require specific actions by the county, qua county, as distinct from the sheriff or the sheriff's office? I would have to go back and look at every provision. I don't recall anything that says the county shall do this or refrain from doing that. But I would say as a general matter that the injunction does apply by virtue of the fact that the county is in privity with the sheriff and is aware of the order. So under the normal rules of the effectiveness of injunctions, the county is bound by the injunction. Right. I guess in my mind it could make a difference in the sense that Judge Berzon was talking about due process if you suddenly know that you have specific duties that you didn't have before. I don't think that the due process issues would be different there than any other person who has not named a party in a lawsuit who nonetheless is subject to an injunction by virtue of privity and knowledge of the injunction. So I would like to turn a little bit to the issue of whether the county deserves any sort of reprieve from the jurisdictional bar. It cites the Chase National Bank case on page three of its reply where the case refers to a suit to which the party is a stranger. Maricopa County is not a stranger to this case. As we've described, even after its dismissal by stipulation without prejudice to rejoinder, it appeared through its own attorneys. It continuously was on notice of every event that occurred in the case up until the present day, starting from August 2010. So it could have filed an appeal at the time, but it chose not to. As Mr. Selden, its attorney, stated, the issue of who would represent the sheriff was an internal dispute within Maricopa County. That's at SCR 513, line 22. And the party should not be suffering prejudice as a result of that dispute. Well, the plaintiffs are suffering prejudice from the fact that we're having to defend this second appeal over the very same issues on which we prevailed earlier. I would also point the court to the fact that, and this is not in our briefs, so it is a new fact as far as the briefing is concerned, that the agreement that started out this whole set of events that led to this lawsuit, the agreement between Maricopa County and ICE, which called for the MCSO to enforce federal civil immigration law for a period of time until that was withdrawn, appears at ER 623. It's a memorandum of agreement. It was attached to the first amended complaint in this action. And it is a contract, a memorandum of agreement, between the United States Immigration and Customs Enforcement and Maricopa County. And it says in the first paragraph, the MCSO represents Maricopa County in the implementation and administration of this MOA. So you have the county agreeing with ICE to start the enforcement of federal civil immigration law, which later became the basis for the claims in this case. If you look at page ER 632 and 633, who signs that agreement on behalf of the county? Joe Arpaio, sheriff, Maricopa County. And it's also signed by the chairman of the board acting of the Maricopa County Board of Supervisors. So that is just one indication of how this case is completely different from the McMillan case that involved the Alabama statutory situation or system where the sheriffs act for the state. This case is completely different because under Flanders and under Braylard, which is the Arizona state law, and that's what governs in this case, as the Supreme Court said in the St. Louis v. Perpotnick case, and it's the Turcotte v. Jefferson County 11th Circuit case, which the county cites, also says the analysis depends upon what state law says. And, in fact, this is Turcotte at 1288. The federal judiciary must respect state and local law's allocation of policymaking authority. So under the Arizona state cases, the sheriff is a policymaker for the county, and this agreement simply confirms, as a factual matter, that legal principle. Our brief in this court on this appeal does not deal extensively with McMillan. I would point the court to our discussion of the McMillan factors in our response to the cert petition that was filed. That's at S.E.R. 6 through 45. We do discuss the McMillan factors in that, and I think any comparison of the constitutional system in Alabama with what we have shown exists in Arizona, when you add the Arizona case law, indicates that this court's earlier decision was correct. And even if this court were inclined to review that decision again, even though it's been had cert denied, the analysis would lead to the same conclusion. I have a correction to make as to the stipulation that was the subject of Judge Wallace's questions earlier. Steptoe and Johnson actually was an attorney for plaintiffs earlier in the case, and the other law firm that was listed in that stipulation was the attorney for the county. And I don't have the page now, but if you look toward the bottom of that, you'll see a law firm that's not Steptoe and Johnson, which is the counsel for the county. And that stipulation, I think, is key to this issue. The county in its reply brief talks about a non-dismissal dismissal, but stipulations have been a part of Anglo-American jurisprudence for a long, long time. And when you have a stipulation to a rejoinder, in the event there's some change in circumstances that makes that rejoinder appropriate, I think there's no question that this court acted properly in that regard. I just wanted to ask, is the county you're referring to at the bottom of that stipulation Riley, Carlock, and Applewhite? Yes, Your Honor. Is that the county lawyer? That was the county's lawyer at that time. Okay. Thank you. Presumably a stipulation to rejoinder isn't a stipulation to liability. Right. You're correct, Your Honor. It is a stipulation to rejoinder, but rejoining, when you've had notice of everything that's happened, it has a second effect. And in this case, given the rules, the generally applicable rules relating to injunctive relief, where someone who has notice of the injunction and is in privity with the enjoined party, I think the effect is that, along with all the other things we've talked about, that the county is bound by the earlier injunctive orders. And would have been bound anyway. Would have been bound anyway. This whole appeal just seems so airy from both sides. I don't see why you care. I'm not sure you do. Do you care, in fact, very much? Well, Your Honor, we care that the appeal be dismissed. But you don't really care. I mean, it wouldn't make really any practical difference to you, as you just said, whether the county was in the case or whether the Maricopa County Sheriff's Office was in the case or not, as long as the sheriff is in the case in his official capacity. We think it's useful for the county to be in the case because it is the party who is paying for the injunctive relief to be implemented. We have a number of orders from the district court granting requests from the monitor in the case to have Maricopa County pay for the monitors. So for purposes of relief, which is exactly what the stipulation said. Exactly right. It is useful to have the county in the case. Judge Wallace, do you have any further questions? No, thank you very much. Thank you, Mr. Young. You've used your time. Mr. Walker, we'll give you your three minutes for rebuttal since we, I think, used at least that trying to fix the technology. Thank you, Judge Graber. On the issue of privity, I think the problem that the plaintiffs have in asserting that there had been adversity between the sheriff and the sheriff's office on the one hand and the county on the other prior to the county's dismissal. And the Sturgill decision out of the United States Supreme Court makes it quite clear that unless you have an identity of interest, which would mean no add to the decision that the county and the sheriff, who were jointly represented at the beginning of this litigation, could no longer be jointly represented. And when you have a conflict, then the leg of the privity doctrine that stands on the idea that somebody who remained in the litigation was representing the absent party just does not apply. I also wanted to address briefly Mr. Young's comment that the court and the plaintiffs' appellees are confronted in this appeal with the very same issues they prevailed on in the prior appeal. That's just simply not true. There was no mention whatsoever in the prior appeal of the McMillan analysis. And that's not surprising. The sheriff has no interest in advancing the question of whether the county can or cannot be subject to imputed liability for his actions. There was no discussion of the due process effects of a judgment being entered. But MCSO did. And MCSO is now determined to be essentially a subdivision. Arizona state law determined, and we followed it, is simply a subcategory of the county, is our understanding. And MCSO did have it. So MCSO was representing the county's interest at that point. I think, Your Honor, that raises the question about whether a judgment against an improperly can be binding against that party. Obviously not. And if it can't be binding against that party, how can we... But it's not binding against that party because that party is really something else. It's a name problem. Well, I think in this instance, given the structure of county government under Arizona law, it is not simply a name problem. These are separate instruments of government at the local level with discrete areas of responsibility and authority and very little overlap and very little ability of one constitutional officer to exert control over the exercise of statutory duties by another constitutional officer. Thank you, Counsel. Thank you, Your Honor. We appreciate the arguments of both parties. And the case just argued is submitted for decision, and we will stand adjourned. All rise.
judges: Wallace, Graber, Berzon